# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **FOOD FAST HOLDINGS, LTD.,** et al, | § | |
| | § | |
| *Debtors.* | § | **Bankruptcy Case No. 02-10542** |
| | § | **Chapter 11** |
| | § | **Jointly Administered** |
| **ROBERT D. HOLMES, TRUSTEE** **FOOD FAST LITIGATION TRUST,** | § | **Civil Action No. 6:04cv562** |
| | § | |
| *Appellant,* | § | |
| | § | **ADVERSARY NO. 03-06082** |
| v. | § | |
| | § | |
| **A.I. CREDIT CORP.,** | § | |
| | § | |
| *Appellee.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from a bankruptcy court's final order. After careful consideration, the Court **AFFIRMS** the Bankruptcy Court's Memorandum of Opinion.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a), as this is an appeal from a final order and ruling entered in favor of Appellees by the Honorable Bill Parker, Chief United States Bankruptcy Judge. This Court has jurisdiction to hear appeals of final orders and interlocutory orders from a bankruptcy court.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about December 10, 2001, Food Fast Holdings, Ltd. and A.I. Credit Corporation entered into a Premium Financing Agreement (the "2001 PFA"). Pursuant to the terms of that

document, A.I. Credit agreed to advance the sum of $316,688.19 to cover the premiums and fees associated with certain insurance policies naming Food Fast as the insured. Food Fast made an initial down payment of $55,886.00 directly to the insurance broker. A.I. Credit financed the remainder of the premiums, with payments due on the 12th day of December and of each of the successive nine months (with the final payment due September 12, 2002). On December 26, 2001 and on January 4, 2002, A.I. Credit received payments on Food Fast's obligation under the 2001 PFA. Each payment was in the amount of $32,534.03. The Trustee alleges these two payments constitute avoidable preferential transfers under 11 U.S.C. § 547.

On January 23, 2002, Food Fast, along with its affiliated companies, filed a petition for relief under Chapter 11 of the Bankruptcy Code. On February 13, 2002, Food Fast, now acting as a Debtor-in-Possession, made an additional payment pursuant to the terms of the 2001 PFA, again in the amount of $32,534.03. The final seven payments were also made in the post-petition period according to the terms of the 2001 PFA. The Trustee contends that the February 13, 2002 post-petition transfer by Food Fast is also avoidable as a payment in violation of 11 U.S.C. § 549.

It is uncontested that, if Food Fast had at any time failed to make payment under the 2001 PFA, A.I. Credit held the right to cancel the insurance policies in order to receive the remaining portion of the unearned insurance premiums as its collateral. A.I. Credit never exercised this right because Food Fast kept the policies in full force and effect by tendering all payments which were required to be made in both the pre-petition and post-petition periods. As the Bankruptcy Court stated, "[Food Fast] enjoyed the full benefit of its side of the bargain with respect to the insurance coverage under the related policies and thereby precluded any necessity by A.I. Credit to invoke the means by which it could protect itself from non-payment." *In Re: Food Fast Holdings, Ltd.*, No. 02-

10542, at 3 (Bankr. E.D. Tex. 2004)(Memorandum of Decision granting summary judgment).

On October 3, 2002, over eight months after the bankruptcy filing, Food Fast sought court approval for the execution of a new Premium Financing Agreement (the "2002 PFA"), under which A.I. Credit would again finance the insurance premiums for Food Fast for the next year. Without objection, the Bankruptcy Court approved Food Fast's entry into the 2002 PFA. On December 13, 2002, Food Fast filed a motion requesting the Bankruptcy Court's authorization to assume various contracts under 11 U.S.C. § 365, including a contract with A.I. Credit described simply as a "Premium Financing Agreement." On January 8, 2003, the Bankruptcy Court authorized the assumption of the designated contracts, including the new Premium Financing Agreement.

Later, A.I. Credit filed a proof of claim for $260,272.24 in Food Fast's underlying bankruptcy case. This amount represented the amount originally owed under the 2001 PFA as of the date of the Food Fast's bankruptcy filing, which was, as a matter of course, proportionately reduced in each succeeding month. On January 7, 2003, Food Fast filed an objection to A.I. Credit's proof of claim which was based upon the 2001 PFA. Food Fast objected because the "claim ha[d] been paid in full." After considering Food Fast's objection, the Bankruptcy Court found its contentions to be "absolutely correct." Because it acknowledged that its claim based upon the 2001 PFA had been paid in full, A.I. Credit did not contest the objection. With no response filed after proper notice, and on the basis alleged by Food Fast that the claim had been paid in full, the Bankruptcy Court sustained the objection in Food Fast's favor.

On January 8, 2003, the Bankruptcy Court entered an Order Confirming Food Fast's First Amended Plan of Reorganization under Chapter 11, which authorized the transfer of all outstanding avoidance claims to the Plan Trust, to be administered by the Appellant and Plan Trustee, Robert D.

Holmes ("Trustee"). The plan's effective date was May 12, 2003.

On December 5, 2003, the Trustee sued A.I. Credit in the Bankruptcy Court (Adversary No. 03-6082) seeking to recover the first and second monthly payments on the 2001 PFA as preferential transfers. On February 18, 2004, the Trustee amended his complaint to allege that the third monthly payment, which was made post-petition, was also avoidable under 11 U.S.C. § 549.

A.I. Credit eventually moved for summary judgment. On November 9, 2004, the Bankruptcy Court granted A.I. Credit's motion, holding that the Trustee's claims were barred by the doctrines of judicial estoppel, res judicata, and equitable estoppel. The Bankruptcy Court entered judgment in favor of A.I. Credit on the same date, and the Trustee initiated this appeal.

## STANDARD OF REVIEW

*Factual Findings of the Bankruptcy Court*

The standard of review for a bankruptcy court's factual findings is found in Bankruptcy Rule 8013: "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." As a corollary of that review standard, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013. Broad deference is given to a bankruptcy court's findings under the clearly erroneous standard:

> The foremost of these principles . . . is that "[a] finding is clearly erroneous when although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." . . . This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.

*Matter of Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985); *see, e.g., Matter of Luce*, 960 F.2d 1277, 1280 (5th Cir. 1992)

(citation omitted); *Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187, 1190 (5th Cir. 1992) (citations omitted).

Additionally, the Fifth Circuit stated that plausibility of the findings in view of the entire record is a key factor and that a reversal of a bankruptcy court's decision is not merited merely because the reviewing court would have decided the case differently had it been the factfinder: "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Webb*, 954 F.2d at 1106 (quoting *Anderson*, 470 U.S. at 574.)

### *Conclusions of Law*

In contrast to the clearly erroneous standard of review for findings of fact, a bankruptcy court's conclusions of law are given *de novo* review by this Court. *Luce*, 960 F.2d at 1280 (citing *Jordan v. Se. Nat'l Bank (In Re Jordan)*, 927 F.2d 221, 223-224 (5th Cir. 1991)).

### *Judicial Estoppel*

In *In re Coastal Plains, Inc.*, the Fifth Circuit explained the standard of review applicable to an invocation of judicial estoppel:

> Because judicial estoppel is an equitable doctrine, and the decision whether to invoke it within the court's discretion, we review for abuse of discretion the bankruptcy court's rejection of the doctrine. *See, e.g., Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir.1996). "[A]n abuse of discretion standard does not mean a mistake of law is beyond appellate correction", because "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States,* 518 U.S. 81, 100, 116 (1996). Accordingly, "[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id. See also Latvian Shipping Co. v. Baltic Shipping Co.,* 99 F.3d 690, 692 (5th Cir.1996) ("We will not find an abuse of discretion unless the district court's factual findings are clearly erroneous or incorrect legal standards were applied"); *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 535 (5th Cir.1996) ("[a court] abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence").

179 F.3d 197, 205 (5th Cir. 1999).

## ANALYSIS

*Judicial Estoppel*

The Trustee's first point of error is that the Bankruptcy Court erred in granting A.I. Credit's motion for summary judgment on the grounds of judicial estoppel. As explained by the Fifth Circuit:

> The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993), *cert. denied,* 511 U.S. 1042 (1994). We recognize the applicability of this doctrine in this circuit because of its laudable policy goals. The doctrine prevents internal inconsistency, precludes litigants from "playing fast and loose" with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment.

*Ergo Science,* 73 F.3d at 598.

The Fifth Circuit has also clearly explained the requirements for application of judicial estoppel:

> In this Circuit, two bases for judicial estoppel must be satisfied before a party can be estopped. First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position.

*Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citations and internal quotations omitted). *Hall* further recognized that the Supreme Court had endorsed a third consideration: "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hall,* 327 F.3d at 399 (citing *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). "Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Coastal Plains,* 179 F.3d at 205.

When a trustee is appointed pursuant to a confirmed plan, the trustee succeeds to the position

of the debtor-in-possession as to the various assets under his charge. *Sunrise Energy Co. v. Maxus Gas Mktg. (In re Sunpacific Energy Mgmt., Inc.)*, 216 B.R. 776, 778 (Bankr. N.D.Tex. 1997). Thus any claim owned by the Trustee is subject to the same burdens and benefits which attached to that claim when it was held by Food Fast, the Debtor-in-Possession, prior to the plan's confirmation.

The Bankruptcy Court found that Food Fast had previously convinced it to disallow A.I. Credit's proof of claim based upon the 2001 PFA, on the grounds that the claim had been paid in full. The Bankruptcy Court also held that the order sustaining that claim objection constituted the Bankruptcy Court's adoption of that position. The Bankruptcy Court went on to say:

> By now asserting that some of the payments made by the Debtor in satisfaction of its obligations under the 2001 PFA and through which the A.I. Credit claim amount was satisfied and therefore disallowed, should now be held avoidable and returnable to the Trust, the Trustee advocates a position which is clearly inconsistent and incompatible with the previous position he assumed from the Debtor. Thus, the Trustee, or, in actuality, his predecessor-in-interest, has acted to satisfy the first two requirements of the judicial estoppel test: (1) by advocating a position clearly inconsistent with a prior position; and (2) by convincing the Court of the validity of that prior position.

*In Re: Food Fast Holdings, Ltd.*, No. 02-10542, at 8-9 (Bankr. E.D. Tex. 2004)(Memorandum of Decision granting summary judgment).

The Bankruptcy Court also found that Food Fast derived a benefit from the fulfillment of its obligation with A.I. Credit, which satisfied the third and final element of judicial estoppel:

> The summary judgment evidence clearly establishes that if the Debtor had failed to make any payment under either PFA, A.I. Credit could have given notice and exercised its foreclosure rights on its collateral. In order to prevent that occurrence and to insure that its insurance coverage remained in effect, the Debtor tendered the payments which the Trustee now seeks to recoup. To hold that a debtor-in-possession can systematically make payments under a contract to keep its insurance coverage in place which thereby negates any necessity (and opportunity) for a creditor to exercise its security interests until such a time as that estate has completely reaped the benefits of that coverage and the creditor no longer has an opportunity to protect itself, and that such debtor at that subsequent time can pursue an avoidance of the payments made is simply untenable. A party cannot induce such forbearance for its own benefit with impunity. That type of unfair benefit is exactly what judicial estoppel is designed to prevent.

*Id.* at 9-10.

After reviewing the record and the arguments of counsel on this issue, it is clear that the Bankruptcy Court did not abuse its discretion in granting summary judgement since all three elements of judicial estoppel are clearly established.

The Trustee further contends that the Bankruptcy Court's reliance on judicial estoppel was improper because it was invoked *sua sponte* and the Trustee was not allowed a proper opportunity to argue the merits of the doctrine. However, the Fifth Circuit has held that the doctrine of judicial estoppel can be applied by courts *sua sponte* in a case such as this one, where the inconsistent position is especially egregious. *See U.S. for Use of Am. Bank v. C.I.T. Constr. Inc.*, 944 F.2d 253, 258 (5th Cir.1991).

Regardless, the Trustee has now had sufficient time to adequately brief the matter and his arguments are wholly unpersuasive. Accordingly, the Court affirms the Bankruptcy Court's granting of summary judgment against the Trustee on the grounds of judicial estoppel.

*Res Judicata*

Res judicata expresses the concept that a final judgment on the merits of a cause of action in a court of competent jurisdiction precludes relitigation of issues that were or could have been adjudicated as part of that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Generally, there are four elements to a valid res judicata claim: (1) the parties must be the same in the two actions, (2) the prior judgment must have been rendered by a court of competent jurisdiction, (3) there must have been a final judgment on the merits, and (4) the same cause of action must be involved. *Eubanks v. FDIC*, 977 F.2d 166, 169 (5th Cir. 1992) (discussing whether a bankruptcy confirmation order can

Case 6:04-cv-00562-LED Document 14 Filed 08/07/2006 Page 9 of 11
Case 03-06082 Doc 265-1 Filed 10/12/06 Entered 10/12/06 15:56:38 Desc Main Document Page 9 of 11

be the basis of a res judicata claim); *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1141 (5th Cir. 1981).

In its Memorandum Decision, the Bankruptcy Court rejected the Trustee's argument that res judicata is not properly applied in a bankruptcy setting. On appeal, the Trustee quotes the late Judge Learned Hand and cites to various bankruptcy opinions from Delaware to support his position that some courts have held that a debtor or trustee's failure to raise a preference claim in the context of a claim objection to a creditor's proof of claim does not bar later litigation of the preference action on grounds of res judicata. However, controlling precedent that would support his position is suspiciously absent from the Trustee's argument. As the Bankruptcy Court pointed out, the Supreme Court has expressly held that "[t]he normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *Katchen v. Landy*, 382 U.S. 323, 334 (1966).

In reviewing the Bankruptcy Court's application of the doctrine of res judicata, it is clear that the first three elements were conclusively established below. Specifically, the parties were the same in both actions,[1] the prior judgment was rendered by a court of competent jurisdiction, and there was a final judgment on the merits. With respect to res judicata's fourth element, the Fifth Circuit applies the transactional test of the Restatement (Second) of Judgments § 24. *Eubanks*, 977 F.2d at 171. That test is based on "the factual predicate of the claims asserted, not the legal theories on which plaintiff relies," and the critical issue is whether the two actions were based on the "same nucleus of operative facts." *Id.* In *Hendrick v. Avent*, the Fifth Circuit applied res judicata where "[t]he initial determinations by the bankruptcy court [were] directly inconsistent with the crux of Hendrick's later actions." 891 F.2d 583, 587 (5th Cir. 1990).

---

[1] "When a trustee prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor." *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001), *citing* 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 541.08 (15th ed. 1996).

As the Bankruptcy Court explained, its finding that A.I. Credit had been paid in full was based on the very same facts as are the Trustee's causes of action—Food Fast's payments to A.I. Credit. The Trustee contends that "the Bankruptcy Court erred in concluding that the arguably avoidable payments were the very basis on which the claim was disallowed . . . ." This argument is without merit, as the Bankruptcy Court correctly found that the Restatement's transactional test, and thus the fourth prong of the res judicata test, were satisfied.

The Trustee goes on to argue the distinction between "contested matters" and "adversary proceedings" in an attempt to negate the application of res judicata to his avoidance actions on the grounds that the initial objections to a proof of claim were merely contested matters. As the Trustee correctly acknowledged, res judicata can apply to contested matters when the matter could and should have been brought in the former proceedings. *See In re Intelogic Trace, Inc.*, 200 F.3d 382, 388 (5th Cir. 2000).

In reviewing the Trustee's contentions, it is clear that Food Fast, (to whose position the Trustee has succeeded), the unsecured creditors' committee (which was chaired by Holmes, now the Trustee), or any of the beneficiaries could have raised the issue in the course of the claim objection process. As A.I. Credit points out, the claim objection process is not an expedited proceeding. In this context, all that would have been necessary was for Food Fast, the unsecured creditors' committee, or one of the beneficiaries to point out that the claim could not be considered "paid in full" because there were potential avoidance actions that might be brought against A.I. Credit. In fact, Bankruptcy Rule 3007 specifically provides that "[i]f an objection to a claim is joined with demand for relief of the kind specified in Rule 7001[2], it becomes an adversary proceeding." FED.

---

[2] Rule 7001 encompasses proceedings to recover money or property. FED. R. BANKR. P. 7001(1).

R. BANKR. P. 3007. Accordingly, res judicata applies to bar the instant avoidance actions because the matters could and should have been litigated in the former proceedings.

## CONCLUSION

As stated earlier, the Bankruptcy Court granted summary judgment for A.I. Credit on the separate and independent doctrines of judicial estoppel, res judicata, and equitable estoppel. Because the Court's denial of the Trustee's appeal on either the issue of judicial estoppel or res judicata effectively disposes of the Trustee's underlying action to recover avoidable preferences, it obviates the need for further consideration of the Trustee's remaining points of error. It is, therefore, **ORDERED** that the Bankruptcy Court's September 9, 2004 Memorandum of Decision is hereby **AFFIRMED**. It is further **ORDERED** that this case is **CLOSED.**

**So ORDERED and SIGNED this 7th day of August, 2006.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**